# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

JON F. RAETHER,

    **Petitioner,**

    **v.**                               **Case No. 13-CV-46**

MICHAEL DITTMANN,

    **Respondent.**

## DECISION AND ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS

Jon F. Raether ("Raether"), a prisoner in Wisconsin custody, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Raether was convicted of one count of second degree sexual assault of a child and one count of felony bail jumping in Calumet County Circuit Court. (Docket # 1 at 2.) Raether alleges that his conviction and sentence are unconstitutional.

The parties have briefed the petition for a writ of habeas corpus and the petition is ready for disposition. For the reasons stated below, the petition for writ of habeas corpus will be granted.

## BACKGROUND

Raether's charges stem from an incident that occurred at an underage drinking party. (Ct. App. Decision, 2011AP793-CR, Docket # 12-7 at 2.) Raether, then eighteen-years-old, and Danielle N., then fourteen-years-old, were among those in attendance. (*Id.*) Five days after the party, Danielle reported to her school guidance counselor that Raether raped her at a party the previous weekend. (Police Report, Docket # 11-1 at 9.) An Appleton police officer interviewed Danielle, as well as two other teenagers present at the party—Emily Bragg ("Bragg") and Emily Brown ("Brown"). (Docket # 12-7 at 3.) The police officer also interviewed Raether, who denied the assault. (*Id.* at 2, 3.)

Danielle told the police that "she was 'pretty highly intoxicated' and could remember only 'bits and pieces of the evening,'" though she recalled unprotected intercourse with Raether and protesting. (*Id.* at 3.) Danielle also stated that Bragg told her some things about what happened. (*Id.*) Her testimony at trial included numerous details that were not present in the police report. (*Id.*) At trial, counsel did not use the police report to impeach Danielle. (*Id.* at 4.)

Emily Bragg, who was hosting the party, told the police that Emily Brown found Danielle in the back bedroom and then yelled that Danielle was not wearing any clothes. (*Id.* at 3.) A large number of the partygoers then went to the back bedroom and Raether was in the bedroom when they got there. (*Id.*) At trial, Bragg testified that she and other people at the party found the bedroom door locked and jimmied it open with a credit card. (*Id.*) She testified that a fully-clothed Raether then walked out. (*Id.*) She further testified that the next morning, Danielle told her that Raether raped her. (*Id.*) Bragg's statement to the police did not include information about a locked door or that Danielle told Bragg that Raether assaulted her. (*Id.*) At trial, Raether's attorney did not use the police reports to try to impeach Bragg. (*Id.* at 4.)

Emily Brown testified as a defense witness. When Raether's attorney questioned her, Brown's testimony conflicted with the statement she gave to the police. (*Id.* at 5.) The attorney did not attempt to reconcile that information on direct, and on cross-examination, the State impeached her with her statement to police. (*Id.*)

After a two day trial, a Calumet County jury found Raether guilty of one count of second degree sexual assault of a child and one count of felony bail jumping. (Docket # 1 at 2.) He was sentenced to 18 years on the first count, comprised of 10 years of initial confinement and eight years

of extended supervision. (*Id.*) His four-year sentence on the second count is concurrent to the sentence on the first count. (*Id.*)

Raether, alleging ineffective assistance of counsel, filed a post-conviction motion for a new trial in the circuit court. At a *Machner*[1] hearing, Raether's attorney acknowledged that he received the police reports, had access to them, and reviewed them.[2] (*Id.*) He did not recall whether strategy played a role in his not using the reports to impeach the witnesses' testimony. (*Id.*) Regarding Emily Brown, the attorney testified that he questioned Brown based on the reports of his private investigator and not on the police reports. He further testified he did not recall if he recognized the discrepancies between the two reports. (*Id.* at 6.) He also testified he recalled no strategic reason for having failed to prepare Brown to explain the discrepancies. (*Id.*) As to the theory of the case, Raether's attorney explained that, as best he could recall, the theory from which he worked was that Raether did not have the opportunity to commit the assault. (*Id.* at 4.)

The circuit court denied Raether's motion for a new trial and he appealed. The Wisconsin Court of Appeals found that counsel was deficient in some aspects of his performance but found that Raether was not prejudiced and affirmed the conviction. The Wisconsin Supreme Court declined further review. Subsequently, Raether filed this petition for writ of habeas corpus.

## STANDARD OF REVIEW

Raether's petition is governed by the Antiterrorism and Effective Death Penalty Act ("AEDPA"). Under AEDPA, a writ of habeas corpus may be granted if the state court decision on the merits of the petitioner's claim (1) was "contrary to, or involved an unreasonable application

---

[1]     *State v. Machner*, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

[2]     The police reports totaled eight pages. (*See* Docket # 11-1 at 35-42.)

of, clearly established Federal law, as determined by the Supreme Court of the United States," 28

U.S.C. § 2254(d) (1); or (2) "was based on an unreasonable determination of the facts in light of the

evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2).

A state court's decision is "contrary to . . . clearly established Federal law as established by

the United States Supreme Court" if it is "substantially different from relevant [Supreme Court]

precedent." *Washington v. Smith*, 219 F.3d 620, 628 (7th Cir. 2000) (quoting *Williams v. Taylor*, 529

U.S. 362, 405 (2000)). The court of appeals for this circuit recognized the narrow application of the

"contrary to" clause:

> [U]nder the "contrary to" clause of § 2254(d)(1), [a court] could grant a writ of
> habeas corpus . . . where the state court applied a rule that contradicts the
> governing law as expounded in Supreme Court cases or where the state court
> confronts facts materially indistinguishable from a Supreme Court case and
> nevertheless arrives at a different result.

*Washington*, 219 F.3d at 628. The court further explained that the "unreasonable application of"

clause was broader and "allows a federal habeas court to grant habeas relief whenever the state court

'unreasonably applied [a clearly established] principle to the facts of the prisoner's case.'" *Id.* (quoting

*Williams*, 529 U.S. at 413).

To be unreasonable, a state court ruling must be more than simply "erroneous" and perhaps

more than "clearly erroneous." *Hennon v. Cooper*, 109 F.3d 330, 334 (7th Cir. 1997). Under the

"unreasonableness" standard, a state court's decision will stand "if it is one of several equally

plausible outcomes." *Hall v. Washington*, 106 F.3d 742, 748-49 (7th Cir. 1997). In *Morgan v. Krenke*,

the court explained that:

> Unreasonableness is judged by an objective standard, and under the
> "unreasonable application" clause, "a federal habeas court may not issue the writ
> simply because that court concludes in its independent judgment that the
> relevant state-court decision applied clearly established federal law erroneously
> or incorrectly. Rather, that application must also be unreasonable."

232 F.3d 562, 565-66 (7th Cir. 2000) (quoting *Williams*, 529 U.S. at 411), *cert. denied*, 532 U.S. 951 (2001). Accordingly, before a court may issue a writ of habeas corpus, it must determine that the state court decision was both incorrect and unreasonable. *Washington*, 219 F.3d at 627.

## ANALYSIS

Raether argues that his trial counsel was constitutionally ineffective for three reasons: (1) counsel performed deficiently by failing to cross-examine witnesses on their contemporaneous statements to police; (2) counsel's questioning of defense witness Emily Brown was deficient; and (3) counsel was deficient in his choice of a theory of defense.

*1.     Legal Standard*

The clearly established Supreme Court precedent for ineffective assistance of counsel claims is set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). To establish ineffective assistance of counsel, Raether must show both "that counsel's performance was deficient" and "that the deficient performance prejudiced the defense." *Id.* at 687. To satisfy *Strickland*'s performance prong, the defendant must identify "acts or omissions of counsel that could not be the result of professional judgment." *U.S. ex rel. Thomas v. O'Leary*, 856 F.2d 1011, 1015 (7th Cir.1988) (citing *Strickland*, 466 U.S. at 690). "The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Harrington v. Richter*, 131 S.Ct. 770, 788 (2011) (quoting *Strickland*, 466 U.S. at 689). A reviewing court must seek to "evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. We "must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance," *id.*, and "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable," *id.* at 690.

To establish prejudice, it is "not enough for the defendant to show that his counsel's errors had some conceivable effect on the outcome of the [trial]." *Hough v. Anderson*, 272 F.3d 878, 891 (7th Cir. 2001). A petitioner must show "that there is a reasonable probability that, but for counsel's errors, the result of the [trial] would have been different." *Strickland*, 466 U.S. at 694. This does not mean that the defendant must show that "counsel's deficient conduct more likely than not altered the outcome in the case." *Id.* at 693. Rather, a "reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Making this probability determination requires consideration of the totality of the evidence before the jury. *Id.* at 695. A "verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Id.* at 696.

The Wisconsin Court of Appeals properly cited *Strickland* and found that Raether's counsel was deficient in failing to cross-examine the State's witnesses on their contemporaneous statements to police and in his questioning of defense witness Emily Brown. (*See* Docket # 12-7.). However, the court of appeals found that Raether was not prejudiced by these two deficiencies. (*See id.*) As to the theory of defense, the court of appeals found that counsel's performance was not deficient. (*Id.* at 4-5.)

The State does not contest the deficiency determinations of the court of appeals. (Docket # 19 at 11.) Therefore, as to the deficiencies found by the court of appeals, I need only review whether the court of appeals' determination that Raether was not prejudiced by these deficiencies was contrary to or unreasonable in light of *Strickland*. As to the theory of defense challenge, I must review whether the court of appeals' determination that trial counsel was not deficient was contrary to or an unreasonable application of *Strickland*.

*2.*     *Whether Counsel's Deficient Performance Prejudiced the Defense*

As noted above, a defendant shows his counsel's deficiency was prejudicial when he demonstrates "that there is a reasonable probability that, but for counsel's errors, the result of the [trial] would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability is one that undermines confidence in an outcome. "To determine whether a different outcome is reasonably probable, the court must evaluate the totality of the available . . . evidence—both that adduced at trial and the additional available evidence that adequate counsel would have procured." *Harris v. Thompson*, 698 F.3d 609, 648 (7th Cir. 2012) (citing *Williams*, 529 U.S. at 397).

In analyzing the prejudice aspect of *Strickland*, the court of appeals found that though Danielle's and Bragg's contemporaneous statements to police contained less detail, Bragg still reported seeing Raether in the bedroom next to the bed where Danielle lay naked and that Danielle's report supported her claim that Raether assaulted her. (Docket # 12-7 at 4.) Accordingly, the court of appeals concluded that trial counsel's failure to impeach these two witnesses did not prejudice Raether. (*Id.*) Regarding counsel's deficient performance as to witness Emily Brown, the court of appeals determined that Raether was not prejudiced by the errors involving Emily Brown; instead, it was Raether's own lack of credibility that "did him in." (*Id.* at 6.) In sum, the court of appeals concluded that "[w]ith Raether's own credibility impaired, and with other evidence that Raether was in the bedroom with a nearly naked Danielle, we cannot conclude that 'but for counsel's unprofessional errors, the result of the proceeding would have been different.'" (*Id.* at 7.)

The court of appeals' conclusion that trial counsel's deficiencies were not prejudicial to the defense was not a reasonable application of the prejudice prong of *Strickland*. Evaluated individually, these errors may or may not have been prejudicial to Raether. But under *Strickland*, I must assess the totality of the individual errors in context of the whole record, not in isolation. As the court of appeals

correctly noted, credibility was the critical issue in this trial. As is not uncommon, there was no eye-witness to the alleged sexual assault, and there was no forensic or scientific evidence. Thus, the trial was a credibility contest. Counsel's errors related to this key issue at the trial.

### 2.1 Prejudice from Failure to Impeach Danielle with Police Report

The incident occurred in 2008 and the case went to trial approximately two years later in 2010. The State's main witness, Danielle, testified at trial that back in 2008 she was fourteen years old. (Jury Trial Transcript, Day One, Docket # 12-1 at 69.) She testified that she was at a party at Emily Bragg's house. (*Id.* at 71.) She knew Emily Bragg through Raether, but they had only met once before. (*Id.*) Raether was also at the party. (*See id.* at 70.) At the time, he was eighteen years old. (*See* Transcript of Jury Trial, Day Two, Docket # 12-2 at 19.) Danielle knew Raether from school. (Docket # 12-1 at 73.) By all accounts, including that of Danielle herself, Danielle was intoxicated, having drunk at least three beers (*id.* at 73) and a full glass of Southern Comfort (*id.* at 74-75). She observed Raether drinking beer, too. (*Id.* at 74.) She further testified she invited Raether to go to one of the bedrooms with her. (*Id.* at 75-76, 77.) The two of them were in the bedroom alone (*id.* at 77) and they were kissing (*id.* at 78). The door was closed. (*Id.*) At some point, Raether locked the door. (*Id.*) After he locked the door, she said she had to go to the bathroom. (*Id.* at 79.) However, because she was too intoxicated to make it to the bathroom, Raether told her to urinate on the floor. (*Id.*) After she urinated on the floor, Raether pulled her pants down, pushed her onto the bed, and raped her. (*Id.* at 79-80.) Raether also took his own pants off. (*Id.* at 80.) While Raether was pulling her pants off, she told him no but he said he knew what he was doing. (*Id.* at 80-81.) After pulling his penis out of her, he stood up, unlocked the door, and walked out. (*Id.* at 81.) She remained lying in the bed. (*Id.* at 82.) Her friend Emily Bragg came in and helped her get dressed. (*Id.*)

Danielle's trial testimony two years after the incident included numerous details not present in the police report of her interview, which occurred days after the incident. As the court of appeals put it, trial counsel "did not use the police reports at trial to attempt to impeach Danielle's amplified recall." (Docket # 12-7 at 4.) In her statement to the police, Danielle reported that Raether raped her. (Police Report, Docket # 11-1 at 10-11.) She also reported that she was "highly intoxicated" and that she only remembered "bits and pieces" of the evening. (*Id.* at 10.) She told the police that she passed out sometime during the intercourse. (*Id.* at 11.) She also told the police that the next thing she remembered was waking up in the garage. (*Id.*) She pounded on the door of the house and nobody came. (*Id.*) She next remembered waking up in the morning in the bathroom with puke all over her and her bra off. (*Id.*) She told the police that her friend, Emily Bragg, "told her some other stuff and [the police] should contact her to see what she could tell them." (*Id.*)

In finding that Raether suffered no prejudice from trial counsel's error in not impeaching Danielle with the police report, the court of appeals noted that Danielle's report to the police supports her claim that Raether sexually assaulted her. In other words, the court of appeals saw the bottom line in Danielle's versions as the same: either way, she said Raether raped her.

But, the court of appeals did not assess the impact of trial's counsel failure to impeach Danielle's "amplified recall" on the totality of the record. There was no eye-witness to the alleged sexual assault. There was no scientific or physical evidence of the sexual assault. Accordingly, the State's case turned on Danielle's testimony. The type of evidence that trial counsel failed to impeach her on was not peripheral. *See, e.g.*, *Jones v. Wallace*, 525 F.3d 500 (7th Cir. 2008) (finding that failure to impeach witness with phone records did not sufficiently undermine the reliability of the trial as the phone records related only peripherally to allegation of sexual assault). A witness could understandably be mistaken about a peripheral fact (for example, in this case trial counsel cross-

examined Danielle on whether she was drinking Southern Comfort versus Bacardi) without undermining her credibility about the contested matter. But in this case, trial counsel failed to use the police report to impeach Danielle on matters at the heart of the case. Specifically, trial counsel failed to use the police report to challenge her on how she only remembered "bits and pieces" days after the incident back in 2008 and remembered so much more two years later in 2010. (*See* Docket # 12-1 at 97-130.) Trial counsel also failed to use the police report to challenge Danielle with her statement to the police that she learned some of the events of the evenings from Emily Bragg. (*Id.*) Evidence regarding Danielle's inability to recall the events of the evening, which counsel failed to impeach her with, could have been critical in persuading a jury that the allegations against Raether were not sufficiently reliable.

Likewise, evidence regarding discrepancies in Danielle's account of the events of the evening that counsel failed to use to impeach her (whether after the alleged assault the next thing she remembered was being in the bedroom half naked where Bragg helped her get dressed, as she testified at trial, or whether the next thing she rememberd was waking up in the garage, as she initially told the police) could have affected the jury's assessment of her credibility. In fact, the prosecutor argued during closing that Danielle's testimony was consistent with her statements made to the police. (*See* Docket # 12-2 at 96.) Drawing the jury's attention to the discrepancies between Danielle's report to the police days after the incident and her testimony at trial approximately two years later might have affected the jury's assessment of her credibility. Given the kind of evidence that comprised the State's case, trial counsel's error in not impeaching Danielle with statements made to the police days after the incident (combined with other errors found by the court of appeals) undermines confidence in the outcome of the trial.

*2.2    Prejudice From Failure to Impeach Emily Bragg with Police Report*

Similarly, trial counsel's failure to impeach Emily Bragg in combination with the failure to impeach Danielle prejudiced Raether. Emily Bragg, who was hosting the party, testified that she did not see Raether and Danielle go into her mother's bedroom. (Docket # 12-1 at 136.) However, she saw Raether come out of the bedroom. (*Id.*) Emily Bragg testified that before Raether came walking out the bedroom, she tried opening the bedroom door, but it was locked. (*Id.* at 179.) She got it open by jimmying it with an ID card. (*Id.*) After opening the bedroom door, she saw Danielle lying in the bed naked. (*Id.* at 137.) She had no shirt on. (*Id.*) Her bra was on but unhooked and she was completely naked from the waist down. (*Id.* at 137-38.) Emily helped Danielle get dressed. (*Id.* at 138, 139-40.) Danielle didn't seemed like herself. (*Id.* at 138-39.) After helping Danielle get dressed, Emily helped her to the bathroom where she vomited. (*Id.* at 140.) The next morning Danielle told her that Raether had raped her. (*Id.* at 146.)

Here, too, the court of appeals found that Bragg's testimony contrasted with her statement to the police. In her account to the police, Bragg stated that another partygoer, Emily Brown, found Danielle in the bedroom and yelled to the partygoers that Danielle had no clothes on. (Docket # 11-1 at 14.) A "large group of individuals" then went into the back bedroom; Raether was in the room when they got there. (*Id.*) Bragg's account to the police did not mention jimmying a locked door or, importantly, that Danielle had told her that Raether had raped her. (*See* Docket # 11-1 at 13-14.)

The court of appeals found that although Bragg's account to the police was less detailed, it still placed Raether in the bedroom next to the bed where Danielle lay naked. (Ct. App. Dec., Docket # 12-7 at 4.) Looking at the totality of the evidence, the court of appeals failed to address the significance of counsel's error in not impeaching Bragg with the police report. In this credibility contest, Bragg's testimony that Danielle told her the day after the party that Raether raped her

bolstered the State's principal witness, Danielle. Because there was no eyewitness to the alleged sexual assault and no physical evidence, Bragg's testimony was not peripheral or cumulative. In fact, the prosecutor argued during closing argument that Emily Bragg's testimony that Danielle had reported to her that Raether raped her was evidence of Danielle's credibility. (Docket # 12-2 at 94, 107-108.) The testimony that counsel failed to produce (that Bragg did not tell the police that Danielle told her the next morning that Raether had raped her) could have been critical in persuading the jury that Bragg was not credible and that Danielle's testimony was not corroborated.

Similarly, the testimony counsel failed to adduce from Bragg (that her police statement was silent on the door being locked and on her having to force it open) might also have affected the jury's assessment of her credibility. The State's case against Raether was not unassailable. And as noted earlier, a verdict only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support. Accordingly, in this credibility contest, it was unreasonable for the court of appeals to conclude that trial counsel's failure to impeach Danielle, the State's principal witness, and Emily Bragg, the State's corroborating witness, with the police report was not prejudicial to Raether.

### 2.3    Prejudice as to Emily Brown

As the court of appeals found, the errors did not end with trial counsel's failure to impeach the State's main witnesses. Trial counsel erred with his own witness, Emily Brown. On direct examination, she testified that she never saw Raether or Danielle in one of the bedrooms and never saw either of them coming out of a bedroom. (Docket # 12-1 at 227.) Brown's trial testimony, as the court of appeals found, was in stark contrast to the account Brown gave to the police. To the police, Brown stated that at some point during the evening, she walked into a bedroom and saw Danielle lying on the bed wearing only a shirt and bra—her pants and underwear completely off. (Docket #

11-1 at 15.) Raether was standing next to the bed and immediately made the comment that he did not

do anything with Danielle. (*Id.*) Brown told the police she did not know how long Raether and

Danielle had been in the bedroom before she arrived. (*Id.* at 15-16.) On direct examination, trial

counsel did not ask Brown to reconcile or explain the discrepancies between these two stories. (*See*

Docket # 12-1 at 222-230.)

On cross-examination, the State, unsurprisingly, impeached Brown with her statement to the

police. (*See* Docket # 12-1 at 230-37.) Brown admitted that she lied on direct because she was nervous

and "wanted to help Raether."[3] (Docket # 12-7 at 5.) When Brown finished testifying, the trial judge

had her arrested for perjury out of the presence of the jury. (Docket # 12-1 at 239-40.)

At the post-conviction motion hearing, trial counsel testified that he questioned Brown based

on the report of his investigator, not the police report. (Transcript of Post-Conviction Hearing, Docket

# 12-4 at 34.) He never met Brown himself to question her or prepare her for her trial testimony. (*Id.*

at 35-36.) He also testified that he did not recall if he had recognized discrepancies between the two

reports and could offer no strategic reason for having failed to prepare Brown himself to explain her

prior inconsistent statements. (*Id.* at 32-33.) At the hearing, trial counsel acknowledged receiving the

police reports in discovery but when asked if he was "familiar" with them at the time of trial, he

testified that he "had access to" and "reviewed" them. (*Id.* at 23.) The court of appeals found trial

counsel performed deficiently as to Emily Brown. But the court determined that Raether was not

prejudiced by the error. The court of appeals found that it was Raether's own credibility that "did him

in" instead of Emily Brown's testimony. The court of appeals adopted the trial court's finding that

---

3          Specifically, when the prosecutor asked Brown, "Well, you didn't want to see your friend
           Jon get in trouble; do you?" she answered, "No." (Docket # 12-1 at 236.)

- 13 -

twenty-year old Raether "took a hit" when he testified at trial that he had thirteen criminal convictions.

The court of appeals' analysis understated the significance of trial counsel's error and its impact on the entirety of the record. First, the court of appeals characterized the error as one of not giving the witness an opportunity to explain her prior inconsistent statement. That is certainly correct. But a more plausible way of viewing the record is that adequate counsel who had read Emily Brown's statement to the police would not have called her as a defense witness at all. Given her divergent statement to the police and then later to the investigator, there is more than a negligible chance that a jury would not find her credible. In presenting her as a witness and having her dramatically impeached by the prosecution, trial counsel, rather than assisting his client, assisted the prosecution's case. He handed the prosecution the argument that the defense was willing and in fact put before the jury a witness to perjure herself to save the defendant. (*See* Docket # 12-2 at 93, 95-96, 108.) It is hard to imagine how such an error would not be prejudicial to Raether's defense. Nonetheless, as discussed above, the error with Emily Brown, as dramatic as it was, was not the only deficiency found by the court of appeals. Even if the error with Emily Brown standing alone would not have prejudiced Raether, trial counsel's errors combined prejudiced him.

The court of appeals found that Raether's admission of thirteen convictions nullified the error with Emily Brown. That assessment has some appeal. Thirteen convictions for a twenty year old is significant, if not remarkable. However, weighing the impact of the defendant's thirteen prior convictions against trial counsel's failure to prepare Emily Brown (or error in calling her at all) misses the mark. As noted earlier, to determine whether a different outcome is reasonably probable the court must evaluate the totality of the evidence—both that adduced at trial and the additional available evidence that adequate counsel would have procured. In this case, the proper analysis is whether

Danielle's and Emily Bragg's testimonies properly impeached with the police report and Emily

Brown properly prepared by counsel (or not called at all) would have had a reasonable probability

of changing the jury's verdict, despite Raether's thirteen convictions. The court of appeals' emphasis

on Raether's thirteen convictions, in isolation, ignores the potential impact of the impeachment of

the State's key witnesses. Again, there was no eye-witness or physical evidence of the alleged sexual

assault. Impeaching the State's witnesses with the police report would have undercut their credibility,

leaving the jury with insufficient evidence to convict despite Raether's thirteen prior conviction. In

other words, the jury could have found Raether not credible because of his thirteen convictions and

also found the State's witnesses insufficiently convincing—the two are not mutually exclusive.

### 2.4     Impact of Trial Counsel's Errors Combined

The court of appeals concluded its prejudice analysis "[w]ith Raether's own credibility

impaired, and with other evidence that Raether was in the bedroom with a nearly naked Danielle,

we cannot conclude that 'but for counsel's unprofessional errors, the result of the proceeding would

have been different.'" (Docket # 12-7 at 7.) This is not supported by the record. The other witnesses

who testified at trial do not place Raether in the bedroom with a nearly naked Danielle. The State

only called one additional witness: Police Officer Rau. He did not testify about Danielle being in the

bedroom at the party. (*See* Testimony of Officer Kyle Rau, Docket # 12-1 at 182-99.) The defense

called five witnesses. Emily Brown, who was impeached (and arrested for perjury) testified on cross-

examination that she saw Danielle partly naked, but she did not testify that she saw Raether in the

room with her. (*See* Testimony of Emily Brown, Docket # 12-1 at 223-39.) In addition to Brown,

three other teenagers who attended the party testified. None of them testified to seeing Raether in the

bedroom with a nearly naked Danielle. (*See* Testimony of Karen Lopez Santana, Docket # 12-1 at

201-222; Testimony of Paulina Hernandez, Docket # 12-1 at 246-75; and Testimony of Edgar

- 15 -

Arroyo, Docket # 12-2 at 12-19.) Raether himself testified that he saw Danielle in the bedroom with his friend Cesar. (Docket # 12-2 at 34, 40.) He testified that he was looking for Cesar and opened the door to a bedroom, at which point Cesar ran out and he then saw Danielle squatting next to the bed and peeing on the floor. (*Id.* at 40.) Raether stated that he was never alone in the bedroom with Danielle. (*Id.* at 35.) Accordingly, the evidence placing Raether in the bedroom with a nearly naked Danielle came from Danielle herself and Emily Bragg. As discussed above, with adequate representation, their credibility or reliability could have been impeached with their prior statements to the police—in the same manner that the prosecutor in this case effectively impeached defense witness Emily Brown with her prior statement to the police.

Moreover, this is not a case that even in the absence of the evidence related to the errors of trial counsel, there was other evidence in the record to support a conviction. Again, there were no eye-witnesses and no physical evidence. In other words, other than the credibility of the State's witnesses, there was no other State evidence for the defense to overcome.

In sum, the court of appeals failed to consider the impact the impeachment of the State's witnesses and the elimination of the error with Emily Brown could have had on the totality of the evidence and ultimately on the jury's assessment of the evidence. As the Seventh Circuit has noted, all a defendant has to do is establish a reasonable doubt. *See, e.g.*, *Washington v. Smith*, 219 F.3d 620, 635 (2000) (granting habeas where all defendant "needed to do was establish a reasonable doubt, and having additional alibi witnesses would have" supported reasonable doubt). Here, impeaching the State's key witness and its corroborating witness with statements given to the police closer in time to the incident would have impacted the jury's assessment of the State's evidence. The Wisconsin Court of Appeals' determination that Raether was not prejudiced by trial counsel's combined errors was an unreasonable application of *Strickland*'s prejudice component to the facts of this case.

*3.        Whether Trial Counsel was Deficient in his Choice of Theory of Defense*

Finally, Raether argues that his trial counsel performed deficiently by choosing a defense theory that was inconsistent with the evidence. At the post-conviction motion hearing, trial counsel testified that his theory of the defense was to argue that Raether did not have the opportunity to commit the assault; i.e., Raether was not alone in the bedroom with Danielle for a sufficient time to have had sexual intercourse with her. (Docket # 12-4 at 27-29, 37.) Raether argues that a better theory of defense would have been "wrong place, wrong time."

The court of appeals found that counsel was not deficient as to his choice of a theory of the case. (*Id.* at 4-5.) The court concluded that Raether did not convince them that his attorney's theory was "based upon caprice rather than judgment" and that it would not second-guess counsel's strategy. (*Id.* at 5.) The court of appeals' determination that counsel was not deficient in his choice of theory of defense was neither contrary to nor an unreasonable application of *Strickland.* Counsel's decision fell in the region of tactics and strategy. The record does not support his choice of defense was professionally unreasonable. On the totality of the record, the difference between "wrong place, wrong time" and "no opportunity" is so nuanced as to render it a distinction without a difference. Therefore, Raether's argument that the court of appeals' decision that his counsel was not ineffective in choosing a theory of the case was unreasonable fails.

## CONCLUSION

Whether a defendant is prejudice by his counsel's errors is to be evaluated on the record as a whole. *See Williams*, 529 U.S. at 397-398. Here, the Wisconsin Court of Appeals viewed counsel's deficiencies in isolation rather than looking at them as a whole and at the errors' cumulative effect. Because the State's case was based only on testimonial evidence, credibility was central to deciding the case. Viewing these errors in combination—the attorney's failure to impeach Danielle or Emily

Bragg and the attorney's failure to prepare Emily Brown (or his decision to call her at all)—undermined confidence in the outcome of this trial. Though "questions of this kind do not lend themselves to the mathematical certainty of an acquittal," *Washington*, 219 F.3d at 635, the Wisconsin Court of Appeals failed to properly apply *Strickland*. The court failed to view the record as a whole and failed to evaluate the cumulative effect of counsel's errors. In this case, trial counsel's combined deficiencies prejudiced Raether. Accordingly, the Wisconsin Court of Appeals' decision is an unreasonable application of *Strickland*'s prejudice analysis. Therefore, the writ must be issued.

## ORDER

**NOW, THEREFORE, IT IS ORDERED** that the petitioner's petition for a writ of habeas corpus (Docket # 1) be and hereby is **GRANTED,** and that petitioner be released within 120 days of the date of this decision unless the State of Wisconsin decides to retry him.

Dated at Milwaukee, Wisconsin this 21st day of August, 2014.

BY THE COURT:

*s/Nancy Joseph*
NANCY JOSEPH
United States Magistrate Judge